**Gene R. SLIVKA, Appellant,**

v.

**SWISS AVENUE BANK and Charles R. Cravens, Jr., Substitute Trustee, Appellees.**

No. 05–83–00433–CV.

Court of Appeals of Texas, Dallas.

June 10, 1983.

Charles R. Cravens, Jr., R. Michael Farquhar, Johnson & Cravens, Dallas, for appellant.

John E. Rapier, Beecham, Brown, Longenecker, Rapier, Dallas, for appellees.

Before STOREY, WHITHAM and ROWE, JJ.

WHITHAM, Justice.

Appellant, Gene R. Slivka, appeals denial of a permanent injunction against appellees, Charles R. Cravens, Jr., substitute trustee, and Swiss Avenue Bank, to restrain and enjoin the Bank from foreclosing on two of his properties securing two loans. Slivka also appeals from a judgment against him and in favor of the Bank for attorney's fees under the two notes. We have previously issued writ of injunction enjoining the Bank and its trustee from disposing of the properties during the pendency of this appeal. We agree with the Bank that the trial court correctly denied permanent injunction. We agree with Slivka that the trial court erred in rendering judgment against him for attorney's fees. Accordingly, we affirm in part and reverse and render in part.

Slivka contends in his first three points that the trial court erred in holding (a) that he waived notice by the Bank of its intent to accelerate maturity of the two notes, that (b) he waived his right to notice of acceleration and (c) that notice of the trustee's sale was not required before the option to accelerate became effective. The applicable provisions of each note and deed of trust are identical. The notes provide:

> Failure to pay any installment of principal or interest hereon when due, shall, at the option of the holder hereof, immediately mature this note and the indebtedness evidenced hereby as fully as if the entire time provided herein had expired; without demand, presentment and notice (the same being expressly waived and in the event default is made in the prompt payment of this note when due or declared due, and the same is placed in the hands of an attorney for collection, or suit is brought on same, or the same is collected through any judicial proceedings whatever, then the makers hereof agree and promise to pay ten per centum (10%) additional on the amount of the principal and interest then owing as attorney's fees. [emphasis added]

Paragraph 13 of the deed of trust provides:

> If there is a default in any payment, or part thereof, under the Note, or if Grantors shall fail to keep or perform any of the covenants, conditions or stipulations herein, then the Note, together with all other sums secured hereby shall, at the option of the Noteholder, become at once due and payable without demand or notice other than that demand or notice provided for in this paragraph, and the Trustee when requested so to do by the Noteholder after such default, shall sell the Mortgaged Premises at public auction to the highest bidder for cash, between the hours of ten o'clock A.M. and four o'clock P.M. on the first Tuesday in any month, at the door of the Courthouse in the County in which the Mortgaged Premises, or any part thereof, are situated, after advertising the time, place, and terms of said sale and the Mortgaged Premises to be sold by posting, or causing to be posted, at least twenty-one (21) consecutive days prior to the date of said sale, written or printed notice thereof at the Courthouse door in each of the Counties in which the Mortgaged Premises are situated (such notice shall designate the County where the Mortgaged Premises will be sold). In addition, at least twenty-one (21) days preceding the date of sale written notice of the proposed sale shall be served by Certified Mail on each debtor obligated to pay such debt, according to the records of the Noteholder. [emphasis added]

Slivka points out that in the notes the words "without demand, presentment

and notice" follow a semi-colon and that the parentheses open prior to the phrase "the same being expressly waived" but are never closed. Slivka argues that the "waiver" clearly relates to and modifies the provisions concerning attorney's fees and does not relate to words or terms of acceleration, i.e., "immediatley mature." Thus, Slivka would have us hold that the notes do not contain his agreement (a) to waive notice of the Bank's intent to accelerate maturity and (b) to waive his right to notice of acceleration. Slivka cites us to no authority and we decline to so hold. We conclude that the "waiver" provisions clearly relate to the words or terms of acceleration and not to the provisions concerning attorney's fees. We reach this conclusion because following the "waiver" provisions the note then proceeds to move on to a separate and distinct subject, i.e., attorney's fees, and makes clear that it is doing so by the phrase "and in the event default is made in the prompt payment. . . ." We hold, therefore, that under the terms and provisions contained in the notes, Slivka agreed (a) to waive notice of the Bank's intent to accelerate maturity and (b) to waive his right to notice of acceleration.[1] Since the notes were in evidence, we conclude that there was evidence, and legally sufficient evidence, of waiver. We hold, therefore, that in light of the express waiver in the notes that no notice of intent to accelerate was required, *Valley v. Patterson*, 614 S.W.2d 867, 872 (Tex.Civ.App.—Corpus Christi 1981, no writ), and that no notice of acceleration was required, *Burnett v. Manufacturer's Hanover Trust Co.*, 593 S.W.2d 755, 759 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r. e.).

■ We now consider Slivka's contention that paragraph 13 of the deed of trust required notice of the trustee's sale before the option to accelerate became effective. Slivka finds this requirement in the language that "then the note . . . shall at the option of the Noteholder, become at once

due and payable without demand or notice other than the demand or notice provided for in this paragraph" and that "[i]n addition, at least twenty-one (21) days preceding the date of sale written notice of the proposed sale shall be served by Certified Mail on each debtor obligated to pay such debt, . . . ." Slivka argues that the first language excerpt requires no notice of acceleration other than as provided in paragraph 13, that paragraph 13 provides for notice of the trustee's sale and that, therefore, the notes cannot be accelerated until Slivka receives notice of the trustee's sale. Thus Slivka would have us hold that notice of sale has to be given prior to acceleration of the debt. We decline to do so. We conclude that the language of the deeds of trust reading "without demand or notice other than the demand or notice provided in this paragraph" simply identifies the one notice that is required under paragraph 13 of the deeds of trust in order to conduct the trustee's sale i.e., written notice of the trustee's sale at least twenty-one (21) days preceding the date of sale. Moreover, to hold as Slivka would have us do would prevent the trustee from noticing the sale because the debt was not matured and could not be matured until he noticed the sale. We decline to make such an illogical holding. We hold, therefore, that notice of trustee's sale was not required before the option to accelerate became effective.

Accordingly, we conclude that the trial court did not err in holding (a) that Slivka waived notice by the Bank of its intent to accelerate maturity of the two notes, that (b) Slivka waived his right to notice of acceleration and (c) that notice of trustee's sale was not required before the option to accelerate became effective.

■ In his fourth point Slivka contends that the trial court erred in holding that his late tender of the December 1982 payments was ineffective. Slivka argues that the

---

**1.** As will be seen later in this opinion the Bank gave Slivka written notice that it had exercised its option to accelerate maturity and demanded payment in full of the unpaid balance of principal due together with accrued and unpaid interest. See December 14, 1982, letter from Bank's attorney to Slivka hereafter quoted.

payments were effective because at the time of tender the Bank had not notified him of its election to accelerate maturity of the notes. We have concluded that Slivka waived his right to notice of acceleration. Accordingly, we hold that the Bank was not required to notify Slivka of its election to accelerate maturity of the notes. Therefore, we conclude that the trial court did not err in holding that Slivka's late tender of the December 1982 payments was ineffective.

In his fifth point Slivka contends that the trial court erred in finding that a fifteen (15) day grace period within which he could make payments on the two notes did not exist. Slivka argues that the Bank had elected to allow him a fifteen (15) day grace period permitting him to make the monthly payments on the two notes within the first fifteen (15) days of each month without penalty and that this past acceptance of late payments of installments on the part of the Bank constitutes a waiver of the right to accelerate in the present case.

It is undisputed that during the entire history of these two loans, the Bank had accepted payments within the first fifteen (15) days of each month irrespective of the first and third days of the month due dates and without penalty. The Bank agrees that there can be a waiver of the right to accelerate maturity of the notes based on past acceptance of late payments. The Bank argues, however, that whether it in the past accepted late payments is not the end of the inquiry. We agree. In the present case the issue is whether the Bank, prior to the late payments for which default is claimed, notified Slivka that in the future it would no longer accept late payments. After the obligor on a note has knowledge, or is charged with knowledge, that he could no longer rely on the holder to further waive its right to insist upon strict compliance with the note and deed of trust, the waiver is no longer in effect. *Bowie National Bank v. Stevens,* 532 S.W.2d 67, 68 (Tex.1975). Therefore, we must determine if Slivka had knowledge that he could no longer rely on the waiver. That knowledge is found in letters from the Bank and its attorney notifying Slivka that in the future the Bank would not accept late payments. As stated in *McGowan v. Pasol,* 605 S.W.2d 728, 732 (Tex.Civ.App.—Corpus Christi 1980, no writ):

> However, where, as is the case here, the holder of the note has accepted late payments on numerous occasions in the past, he is precluded from accelerating the maturity of an installment note because of a single late payment unless he has, prior to the late payment for which default is claimed, notified the maker that in the future he will not accept late payments.

On October 21, 1982, the Bank wrote Slivka:

> On September 13, 1982, I wrote you concerning Real Estate notes # 169 and # 183. Our records indicate that the October 1st and 3rd payments were again received beyond the due dates, similar to previous delinquent payments. However, an October 8, 1982, conversation with you here in the Bank led me to believe that there is a misunderstanding on your part as to our request. Therefore, to clarify our position I am writing you again in reference to your loans. Let me re-emphasize that the payments on the two above mentioned loans must be physically received at the bank, on it's premises, before 3:00 PM on the due dates. We will not accept any payments received by our bank later than 3:00 PM on the specified due dates.
>
> In my earlier correspondence of 9/13/82 I indicated a due date of the 1st of the month on your note # 183, dated November 3, 1978. This was, of course, an oversight on my part. The correct date is the 3rd of each month.
>
> This becomes effective with your December 1, 1982, and December 3, 1982, payments.
>
> Again, we will appreciate your cooperation in our request.

Thus the Bank made it clear to Slivka that beginning with the *December 1982* payments the payments were to be made on

the respective due dates of *December 1 and December 3, 1982.* Disregarding the instructions in the letter, Slivka made the December 1982 payments late. On December 14, 1982, the Bank's attorney wrote Slivka:

Please be advised that this firm serves as legal counsel to Swiss Avenue Bank, Dallas, Texas. In this connection, the bank has brought to our attention that you were previously notified in writing that it would no longer accept any past-due payments on your real estate note number 169 or your real estate note number 183. Each of these notes provided that your payments were due on or before the first day of the month. On December 8, 1982, the bank received your check number 5190 dated December 1, 1982, mailed to Swiss Avenue Bank on December 7, 1982, in the amount of $2,197.03, representing monthly payments due on both of the mentioned notes. The described check is enclosed and returned to you. Swiss Avenue Bank has exercised its option to mature the unpaid balance of both such notes due to your failure to timely make required monthly payments. Accordingly, formal legal demand is hereby made for the full unpaid balance of principal due under both such notes, together with accrued and unpaid interest at note rate until date of payment. In the event of your failure to pay these notes in full, the bank will have no option but to post the properties for foreclosure under the deeds of trust securing such notes.

On January 4, 1983, Slivka's attorney hand delivered to the Bank's attorney a cashier's check for the amount of the December 1982 and January 1983 payments on both notes which the Bank's attorney refused to accept.

We conclude that the Bank's October 21 letter notified Slivka that in the future the Bank would not accept late payments and charged Slivka with knowledge that he could no longer rely on the Bank to further waive its right to insist upon strict compliance with the notes and deeds of trust. Accordingly, we conclude that the trial court did not err in finding that a fifteen (15) day grace period did not exist at the time Slivka tendered the December 1982 payments on the two notes.

In his sixth point Slivka contends that the trial court erred in granting the Bank a judgment for attorney's fees. *The Bank did not sue on the note.* The Bank filed an original answer to Slivka's original petition seeking to enjoin the trustee's sale. The Bank's original answer contained a general denial, two special denials and a paragraph seeking attorney's fees as provided in the notes. We treat that paragraph in the Bank's original answer as a counterclaim for the amount of the attorney's fees. The notes in pertinent part provide:

[I]n the event default is made in the prompt payment of *this note* when due or declared due, and *the same* is placed in the hands of an attorney for collection, or suit is brought *on same,* or *the same* is collected through any judicial proceedings whatever, then the makers hereof agree and promise to pay ten per centum (10%) additional on the amount of the principal and interest then owing as attorney's fees. [emphasis ours].

Thus the instrument sets forth three conditions when attorney's fees can be recovered under the contract when the *note* is due or declared due:

1. if *same* (the note) is placed in the hands of an attorney for collection,
2. if suit is brought on *same* (the note), or
3. if the *same* (the note) is collected through any judicial proceedings whatever.

The Bank relies solely on the third condition and argues that it is entitled to recover attorney's fees because Slivka's action seeking to enjoin the trustee's sale is a "judicial proceeding." We agree that Slivka's action constitutes a "judicial proceeding." We disagree, however, that the Bank can recover attorney's fees alone in that judicial proceeding separate and apart from the amount due on *the note.* We conclude that

*the note* must be collected through the judicial proceeding before attorney's fees can be recovered. Since the Bank did not sue on *the note* and *collect* on *the note,* we conclude further that the condition which the Bank relies upon has not been met. Accordingly, we hold that the Bank was not entitled to recover in this action the attorney's fees provided for in the notes. Therefore, we conclude that the trial court erred in granting the Bank judgment for attorney's fees. We do not reach the question of whether the Bank may recover attorney's fees in any other action or by virtue of the terms and provisions of the deeds of trust and this opinion is not to be read as holding that the Bank may not hereafter recover attorney's fees as provided for in the notes and deeds of trust.

We affirm the judgment of the trial court insofar as it denies a permanent injunction against the Bank. We reverse the judgment of the trial court insofar as it awards the Bank the amount of $11,735.77 for attorney's fees and render judgment that the Bank take nothing against Slivka. Our writ of injunction is dissolved and of no further effect. All costs are taxed one-half to Slivka and one-half to the Bank.